UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nancy Axline,

       Plaintiff,

v.                                    Civil No. 17-511 (JNE/DTS)
                                    ORDER

3M Company and Arizant
Healthcare, Inc.,

       Defendants.

---

     Defendants 3M Company and Arizant Healthcare, Inc. ("Defendants") move

under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings on all of

Plaintiff Nancy Axline's claims. ECF No. 21. Plaintiff opposes the motion. ECF No.

32. As set forth below, the Court grants Defendants' motion in part.

## **BACKGROUND**

     Plaintiff is a resident of Ohio. She alleges that, on April 21, 2009 in Ohio, she

underwent surgery for a left total hip arthroplasty. She further alleges that a Bair Hugger

used during this surgery caused a periprosthetic joint infection that required her to

undergo multiple additional procedures, also in Ohio. ECF No. 1.

     Plaintiff filed her short-form Complaint on February 17, 2017. It asserts fourteen

causes of action: (1) negligence, (2) strict liability for failure to warn and strict liability

for defective design and manufacture, (3) breach of express warranty, (4) breach of

implied warranty of merchantability under Ohio law, (5) violation of the Minnesota

Prevention of Consumer Fraud Act, (6) violation of the Minnesota Deceptive Trade

1

Practices Act, (7) violation of the Minnesota Unlawful Trade Practices Act, (8) violation of the Minnesota False Advertising Act, (9) consumer fraud and/or unfair and deceptive trade practices under Ohio law, (10) negligent misrepresentation, (11) fraudulent misrepresentation, (12) fraudulent concealment, (13) loss of consortium, and (14) unjust enrichment.[1] *Id.*

In Defendants' motion for judgment on the pleadings, they assert that Ohio choice-of-law rules and substantive law govern this case. They then argue that Ohio's tort reform statute—the Ohio Product Liability Act ("OPLA")—bars all but one of Plaintiff's claims. ECF No. 23.

Plaintiff opposes dismissal of her claims. She asserts that Minnesota choice-of-law rules apply, not Ohio choice-of-law rules. From this, she argues that Minnesota choice-of-law rules require that Minnesota substantive law govern her claims. And because Minnesota law, unlike Ohio law, does not bar her claims, Plaintiff contends that there is no basis for dismissal. In the alternative, Plaintiff requests leave to amend her Complaint. ECF No. 32.

## LEGAL STANDARD

Rule 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss for failure to state a claim." *Eggenberger v. West Albany Twp.*, 90 F. Supp. 3d 860, 862 (D. Minn.

---

[1] In her opposition to Defendants' motion, Plaintiff voluntarily dismisses Count 4 for breach of implied warranty of merchantability and Count 13 for loss of consortium. ECF No. 32.

2015) (citing *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009)).  As a result, to survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## **DISCUSSION**

For the reasons below, Ohio choice-of-law rules and Ohio substantive law govern this case.  Under Ohio substantive law, the Court must enter judgment on most but not all of Plaintiff's claims.

### I.  **Ohio's Choice-of-Law Rules Apply.**

Pretrial Order No. 5 ("PTO 5") establishes the procedure for "direct filing" in the District of Minnesota.  MDL ECF No. 37.  Direct filing an action in this district "minimize[s] delays associated with transfer of actions involving Bair Hugger claims pending or originating in other federal district courts to this Court."  *Id.*  PTO 5 also governs the appropriate choice-of-law rules for direct-filed actions:

> [T]he Court will apply Minnesota choice-of-law rules unless Plaintiff clearly identifies the following information in the initial complaint: (1) current residence; (2) date and location of surgery plaintiff claims Bair Hugger was used; and (3) the appropriate venue where the action would have been filed if direct filing in this District were not available.  If the Plaintiff identifies that information, then the choice-of-law rules from the appropriate venue shall apply.

*Id.* at 1-2.

PTO 5 is consistent with most of the choice-of-law rulings of other courts presiding over multidistrict litigation ("MDL").  They have concluded that an MDL court should

3

apply the choice-of-law rules of either (1) the forum where the MDL plaintiff originally filed his or her action prior to transfer or (2) the forum where the MDL plaintiff would have filed his or her action but for the possibility of direct filing. *See, e.g.*, *Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 494 (6th Cir. 2015) (concluding that in case direct-filed pursuant to MDL court order on direct filing, MDL court properly applied choice-of-law rules of forum in which plaintiff would have filed case had direct filing been unavailable); *In re Temporomandibular Joint Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation."); *In re SuperValu Inc., Customer Data Sec. Breach Litig.*, 14-md-2586, 2018 WL 1189327, at *10 (D. Minn. Mar. 7, 2018) (stating that, although a "district court sitting in diversity typically applies the choice-of-law rules of the forum state in which it sits, . . . the forum state [in an MDL] is normally the state where the action was filed before it was transferred to the court presiding over the" MDL). *But see Byers v. Lincoln Elec. Co.*, 607 F. Supp. 2d 840, 844 (N.D. Ohio 2009) (stating that direct filing of complaint in Ohio MDL court, pursuant to court order on direct filing, required application of Ohio's choice-of-law rules).

Plaintiff direct-filed her Complaint. In it, she lists her current residence (Ohio), provides the date (April 21, 2009) and location (New Albany, Ohio) of her surgery, and states that she would have filed her Complaint in the United States District Court for the Northern District of Ohio absent the availability of direct filing in this Court. ECF No. 1.

Under these circumstances, PTO 5 directs the Court to apply the choice-of-law rules of Ohio.

## II.     Ohio Substantive Law Governs this Case.

Ohio adopts the choice-of-law approach set out in the Restatement (Second) of Conflict of Law. *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288-89 (Ohio 1984). Section 146 of the Restatement provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied.

*See also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011) (concluding that, in Ohio, "the place of the injury controls in a consumer-protection lawsuit, requiring application of the home-state law"). Thus, in Ohio there is a "rebuttable presumption that the law of the place of injury" will apply. *In re E.I. du Pont de Nemours & Co.*, 13-md-2433, 2015 WL 10910489, at *11 (S.D. Ohio May 20, 2015).

Plaintiff's injury occurred in Ohio. So Ohio substantive law applies unless "some other state has a more significant relationship . . . to the occurrence and the parties." Restatement (Second) of Conflict of Law § 146. The following factors determine whether another state has a more significant relationship to the case:

> (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 [of the Restatement (Second) of Conflict of Law] which the court may deem relevant to the litigation.

*Morgan*, 474 N.E.2d at 289 (quoting Restatement (Second) of Conflict of Law § 145).

Neither Plaintiff nor Defendants address the "more significant relationship" test. And the Court is unaware of any basis for regarding Minnesota as the state with the "more significant relationship" to the occurrence and the parties. The Court therefore applies Ohio substantive law.

### III.    The Ohio Product Liability Act Bars Most of Plaintiff's Claims.

Defendants argue that the Ohio Product Liability Act ("OPLA") requires dismissal of all claims. Plaintiff offers no argument as to the viability of her claims under the OPLA. Instead, she argues that Minnesota choice-of-law rules and substantive law apply and that her claims survive under Minnesota substantive law. In the alternative, Plaintiff requests that, if the Court applies Ohio substantive law, the Court grant her leave to amend her Complaint. Thus, Plaintiff appears to concede that the OPLA bars at least some of her claims. As explained below, the OPLA bars all but the claims under Minnesota's consumer protection statutes.

### A.    Common Law Product Liability Claims.

With the OPLA, the Ohio "legislature intended . . . to abrogate *all* common law product liability claims." *Wimbush v. Wyeth*, 619 F.3d 632, 637 (6th Cir. 2010) (emphasis in original); *see also Hendricks v. Pharmacia Corp.*, 12-cv-613, 2014 WL 2515478, at *3 (S.D. Ohio June 4, 2014) (explaining that the OPLA "explicitly eliminates all common law product liability claims or causes of action" and "'applies to any

recovery of compensatory, punitive, or exemplary damages based on a product liability claim'" (citation omitted)).

Plaintiff asserts common law product liability claims for negligence (Count 1), strict liability failure to warn and defective design and manufacture (Count 2), breach of express warranty (Count 3), negligent misrepresentation (Count 10), fraudulent misrepresentation (Count 11), and fraudulent concealment (Count 12). The OPLA abrogated these claims. Plaintiff offers no argument to the contrary. The Court therefore dismisses Counts 1, 2, 3, 10, 11, and 12.

B.    Ohio Consumer Sales Practices Act Claim.

Defendants argue that the OPLA also bars Plaintiff's claim under the Ohio Consumer Sales Practices Act for unfair and deceptive trade practices (Count 9). Courts considering the issue have concluded that the OPLA bars Ohio consumer protection claims, like Plaintiff's, that are "premised upon alleged personal injuries and [are] 'primarily rooted in product liability claims.'" ECF No. 23 at 6 (citation omitted). *See, e.g.*, *Hendricks v. Pharmacia Corp.*, 12-cv-613, 2014 WL 2515478, at *3 (S.D. Ohio June 4, 2014) (explaining that the "OPLA preempts [actions under the Ohio Consumer Sales Practices Act "OCSPA"] where the OCSPA claims are primarily rooted in product liability claims"); *Harris v. Eli Lilly & Co.*, 12-cv-2481, 2012 WL 6732725, at *3 (N.D. Ohio Dec. 28, 2012) (stating that it "is clear from the law" that product liability claims for "violation[s] of [Ohio] consumer protection statutes must be dismissed as abrogated

by the OPLA").  Plaintiff offers no argument that the OPLA permits her claim.  The Court therefore dismisses Count 9.

      C.    <u>Unjust Enrichment Claim.</u>

The OPLA "applies to any recovery of compensatory, punitive, or exemplary damages based on a product liability claim." *Tolliver v. Bristol-Myers Squibb Co.*, 12-cv-754, 2012 WL 3074538, at *2 (N.D. Ohio July 30, 2012) (citing Ohio Rev. Code Ann. § 2307.72(A) and (B)).  "The statute defines a 'product liability claim' as one 'that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question' allegedly resulting from a manufacturing or design defect, inadequate warning, or nonconformance with manufacturer representations." *Id.* (quoting Ohio Rev. Code Ann. § 2307.71(A)(13)).  Based on this, Defendants conclude: "Plainly, Ms. Axline's [product liability-based] unjust enrichment claim seeks compensatory damages for physical injuries and emotional distress, albeit through the mechanism of disgorgement.  She does not allege that she has suffered any other types of damages." ECF No. 23 at 7.  Accordingly, Defendants insist that the OPLA bars the claim.  Plaintiff fails to oppose this argument.  The Court dismisses her claim for unjust enrichment (Count 14). *See Leen v. Wright Med. Tech., Inc.*, 15-cv-125, 2015 WL 5545064, at *2 (S.D. Ohio Sept. 18, 2015) (dismissing product liability-based unjust enrichment claim as barred by the OPLA).

D.    Minnesota Consumer Protection Claims.

Plaintiff asserts claims for violations of the Minnesota Prevention of Consumer Fraud Act (Count 5), Minn. Stat. § 325F.69, the Minnesota Deceptive Trade Practices Act (Count 6), Minn. Stat. § 325D.44, the Minnesota Unlawful Trade Practices Act (Count 7), Minn. Stat. § 325D.13, and the Minnesota False Advertising Act (Count 8), Minn. Stat. § 325F.67.  ECF No. 1.  Defendants provide two reasons that the Court should dismiss these claims.  Both are unpersuasive.

First, Defendants assert that "Ms. Axline's claims fail because, as this Court ruled in *Gareis*, fraud-based claims [under Minnesota's consumer protection statutes] require at least a showing of negligence.  Case No. 16-4187, ECF No. 113 at 3.  In *Gareis*, the Court ruled as a matter of law that there was no duty to warn and no negligence as of November 2010 (the date of Mr. Gareis's surgery)."  ECF No. 23 at 10.  Because "Ms. Axline's surgery took place on an even earlier date (April 2009)," Defendants contend that the Court should likewise dismiss her claims for violations of the Minnesota consumer protection statutes.  *Id.*

But *Axline* is a separate case and rulings from *Gareis* do not bind the Court here. What is more, in *Gareis*, the Court premised dismissal on a review of the evidence submitted with Defendants' motion for summary judgment.  The Court is not permitted to consider such matters outside the pleadings on a Rule 12(c) motion.  *See* Fed. R. Civ. P.

12(d).  In other words, the Court cannot now consider the evidence and reasons for dismissing the Minnesota consumer protection claims in *Gareis*.

Second, Defendants argue that Minnesota's consumer protection statutes should not apply in this case, where Ohio law governs, "because they would conflict with the separate products liability regime" in Ohio.  ECF No. 23 at 9.  They correctly state that, "[t]hrough the OPLA . . . , Ohio has comprehensively reformed its product liability law and abrogated many causes of action, including claims brought under Ohio's own consumer fraud statute."  *Id.*  Defendants insist that applying Minnesota consumer protection claims, when Ohio law bars Ohio's own consumer protection claims, would "undermine the balance the Ohio legislature and courts have struck between providing rights of action to injured persons and fostering commerce."  *Id.*

Yet Defendants cite no authority requiring the dismissal of the Minnesota consumer protection claims.  The Court therefore declines to dismiss these claims as against Ohio public policy.[2]

**IV.** **The Request for Leave to Amend is Denied.**

---

[2] Defendants also argue that "Minnesota consumer protection statutes cannot be applied to products liability-based claims relating to injuries suffered outside Minnesota by non-Minnesotans."  ECF No. 23 at 9.  Defendants cite no authority for their proposition.  The Court therefore declines to dismiss on this basis.

Plaintiff maintains that, "should this Court determine Ohio law will apply, Plaintiff should be permitted to amend her Complaint to bring claims for design defect and failure-to-warn under the OPLA, O.R.C. § 2307.75 and 2307.76." ECF No. 32 at 16.

This informal request for leave to amend fails to comply with the local rules. Local Rule 15.1 requires a party seeking leave to amend to provide (1) a copy of the proposed amended pleading and (2) a red-lined version of the proposed amended pleading. Plaintiff provides neither. The Court may deny leave to amend when, as here, a party fails to abide by Local Rule 15.1. *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) ("A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules.") The Court thus denies Plaintiff's request to amend her Complaint.

## CONCLUSION

Based on the files, records, and proceedings herein, IT IS ORDERED THAT:

1. Defendants' Motion for Judgment on the Pleadings (ECF No. 21) is GRANTED IN PART.

2. The following counts are DISMISSED: 1, 2, 3, 4, 9, 10, 11, 12, 13 and 14.

3. Plaintiff's request for leave to amend her Complaint is DENIED.

Dated: September 10, 2018

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge